CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 15 2015

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

Freddie Eugene Casey, No. 1029731
River North Correctional Center
329 Dell Brook Lane
Independence, Virginia 24348
        **Plaintiff,**

**v.**

CIVIL ACTION NO.: 715cv00674

Jack S. Hurley, Circuit Court Judge
101 E. Main Street, Suite 202
Tazewell, Virginia 24651;

Michael L. Dennis, Commonwealth Attorney
Dennis H. Lee, Commonwealth Attorney
104 Court Street (P.O. Box 946)
Tazewell, Virginia 24651

Harold W. Clarke, Director
Virginia Department of Corrections; *et.al*
        **Defendants.**

## CIVIL RIGHTS ACT, 42 USC §1983
## STATEMENT OF THE CLAIM

### Claim : The defendants have denied the plaintiff access to testing of forensic evidence needed to properly file post-conviction relief

**Supporting Facts:** In both <u>Cherrix v. Braxton</u>, 131 F.Supp.2d 756 (E.D. Va. 2001)

and <u>Skinner v. Switzer</u>, 562 U.S. 521 (2011), the argument of whether a convicted

petitioner is entitled to the testing of evidence necessary to resolve a claim of actual

innocence was addressed and finalized.  Despite these holdings, my numerous

attempts at receiving testing in the state courts have gone unanswered or simply

denied without reason.

    In <u>Skinner</u>, the U.S. Supreme Court found that a state's refusal "to release

the biological evidence for testing ... deprived [him] of his liberty interests in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of his sentence."

That Court has several times considered when a state prisoner, complaining of unconstitutional state action, may pursue a civil rights claim under §1983, and when habeas corpus is the prisoner's sole remedy.  The path marking decision in Heck v. Humphrey, 512 U.S. 477 (1994), concerned a state prisoner who brought a §1983 action for damages, alleging that he had been unlawfully investigated, arrested, tried, and convicted.  The Court held then that §1983 was not an available remedy because any award in the plaintiff's favor would "necessarily imply" the invalidity of his conviction.  See id., at 487.   In contrast, in Wilkinson v. Dotson, 544 U.S. 74 (2005), the Court held that prisoners who challenged the constitutionality of administrative decisions denying them parole eligibility, could proceed under §1983, for they sought no "injunction ordering ... immediate or speedier release into the community," id., at 82, and "a favorable judgment [would] not 'necessarily imply' the invalidity of [their] conviction[s] or sentence[s]," ibid. However, like the case decided in Skinner, success in this suit for DNA testing would not "necessarily imply" the invalidity of my conviction.  Test results might prove exculpatory, but that outcome is hardly inevitable, for those results could also prove inconclusive or incriminating.

In 2001, more than six years after my conviction, Virginia enacted Code §19.2-327.1, a statute allowing prisoners to gain post-conviction DNA testing in

limited circumstances.  To obtain DNA testing under this section, a prisoner must meet certain criteria.

A movant may apply for testing if: (i) the evidence was not known or available at the time the conviction or adjudication of delinquency became final in the circuit court or the evidence was not previously subjected to testing because the testing procedure was not available at the Department of Forensic Science at the time the conviction or adjudication of delinquency became final in the circuit court; (ii) the evidence is subject to a chain of custody sufficient to establish that the evidence has not been altered, tampered with, or substituted in any way;  (iii) the testing is materially relevant, noncumulative, and necessary and may prove the actual innocence of the convicted person or the person adjudicated delinquent;  (iv) the testing requested involves a scientific method employed by the Department of Forensic Science;  and (v) the person convicted or adjudicated delinquent has not unreasonably delayed the filing of the petition after the evidence or the test for the evidence became available at the Department of Forensic Science.  See Va. Code §19.2-327.1 (A).

Invoking Va. Code §19.2-327, I twice moved in state court, first in 2012 and again in 2014, for DNA testing of yet untested biological evidence and a retesting of evidence previously found to be "inconclusive" during my trial.  Both motions were denied.  In issuing the denial of my first motion, the circuit court held that I failed to comply with Virginia Code §19.2-327.1 (C), in that a copy of the motion was not served upon the attorney for the Commonwealth.  See attached Order, entered on October 24, 2012 and September 20, 2013.

My second motion was denied, this time on the ground that I failed to enumerate "the reason or reasons that the ... untested evidence may prove the actual innocence of the person convicted or adjudicated delinquent", Va. Code §19.2-327.1 (B) (iii), and that my actual innocence could not be proven by testing the requested evidence.  Moreover, my motion to preserve, store and or retain the evidence being requested tested was also denied.  See attached Order, entered on October 8, 2014.

I am therefore asking this Court, as a remedy to this suit, to employ 28 U.S.C. §848(q) within the limit of the powers the statute grants.  Section §848(q) provides: "In any post conviction proceeding under section 2254 ... seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9)." 21 U.S.C. §848(q)(B).

Section §848(q) is a funding statute that authorizes this Court to disburse federal funds so that a petitioner can obtain investigative and/or other services in pursuit of relief.  It requires a district court to provide for the furnishing of investigative and other services upon a showing that such services are "reasonably necessary" to a petitioner's development of his case.  See 21 U.S.C. §848(q)(9) (stating that a habeas petitioner shall be entitled to the furnishing of services upon a showing of reasonable necessity); McFarland v. Scott, 512 U.S. 849 (1994) (stating that §848(q) on its face grants indigent capital defendants a mandatory right to

qualified legal counsel and related services).  If I am able to make a showing that

DNA testing is "reasonably necessary" to petition for relief, habeas or otherwise,

this Court has the discretion to provide for funds for testing or discovery that may

be necessary to support any petition seeking relief from a conviction.

The Fourth Circuit has stated that the services of an expert are reasonably

necessary if either:  (a) the services are needed to prepare the claims in the habeas

petition, or to obtain evidence not yet acquired to support a claim in the habeas

petition; or (b) the habeas petition raises claims entitling the petitioner to a hearing

at which such expert would testify.  See Lawson v. Dixon, 3 F.3d 743, 753 (4th

Cir.1993) (holding that habeas petitioner did not need services of psychiatrist

because:  (i) petitioner had already filed his petition, and so did not need

psychiatrist to prepare his claims;  and (ii) psychiatrist had already formed an

opinion on the elements of petitioner's claim, so petitioner had already acquired the

evidence sought).  As will be explained in great detail herein, I will be able to raise

claims of constitutional violations and actual innocence that can only be explored

through DNA analysis of blood and other physical evidence taken from the murder

scene.  Therefore, I can satisfy the first standard set forth by the Fourth Circuit for

demonstrating that the requested DNA services are "reasonably necessary."

The National Institute of Justice published a report in 1996 profiling the

cases of 28 different individuals who had been convicted of crimes and subsequently

exonerated by post-conviction DNA tests.  See National Commission on the Future

of DNA Evidence, CONVICTED BY JURIES, EXONERATED BY SCIENCE:  CASE

STUDIES IN THE USE OF DNA EVIDENCE TO ESTABLISH INNOCENCE

AFTER TRIAL. (Hereinafter "1996 REPORT").  In response to the report's concerns,

and to maximize the value of forensic DNA evidence in the criminal justice system,

Attorney General Janet Reno established the National Commission on the Future of

DNA Evidence.  See 1999 REPORT, at iii.  The report, entitled Postconviction DNA

Testing:  Recommendations for Handling Requests ("1999 Report"), provides law

enforcement officials with information and guidelines for addressing requests for

post-conviction DNA testing.  See generally 1999 REPORT.

     The 1999 Report recommends that DNA testing always be allowed in cases

like mine. See id. at 3 (stating that prosecutors and defense counsel should concur

on the need for DNA testing in Category 1 cases).  The Report categorizes requests

for post-conviction DNA testing into five categories and provides a sound framework

for analysis of requests.  Category 1 cases are cases in which biological evidence was

collected and still exists, and if such evidence is subjected to DNA testing or

retesting, exclusionary results will exonerate the habeas petitioner.

     Throughout my prosecution, the Commonwealth has asserted that, while

many were present at the scene, I was the sole perpetrator who stabbed the victim

over 117 times, resulting in large amounts of blood and thereafter, where the body

was moved.  Therefore, if the theory of the prosecution's case is correct, my DNA

would be on all of the obtained evidence, on the surfaces of the crime scene, and

included in many other aspects of the case.  The central evidence used to convict me

consisted of numerous uncorroborated testimonies of "jailhouse informants" about

confessions made by me, which themselves contained multiple inconsistencies and

inaccuracies.  Even recognizing this, in closing arguments, the prosecution still

urged the jury to rely on the testimonies as corroborating evidence of my guilt. The prosecution used testimony and circumstantial evidence that today would not be accepted. It takes no great flash of genius to conclude that the exertion utilized in this crime has left some traces of the perpetrator on the retained, requested materials. Throughout all of my proceedings, I have maintained my innocence, and no physical evidence conclusively has connected me to the victim's murder. I am moving for a retest of the Commonwealth's exhibits 1 through 14; Item CME-2: blood sample from Troy Lee Stanford; Item T-2, T-2C, T-3, T-3C, T-4, T-4C: stained and control swabs; Items D-1 through D-5: hair and fibers from carpet pieces; and Item 3-A: clothing retained by the Division of Forensic Sciences, (FS Lab No.: W91-00491), because new DNA tests could possibly prove what the original test could not: My potential innocence. I can utilize the facts in my case, my claims of constitutional error, and the possible evidence procured from the DNA test in an attempt to make a truly persuasive showing of innocence coupled with constitutional error in his trial. See Schlup v. Delo, 513 U.S. 298 (1995); see also Herrera v. Collins, 506 U.S. 390 (1993). Therefore, this is a Category 1 case, and, under 21 U.S.C. §848(q), DNA testing is reasonably necessary to my claims. The testing will give me the opportunity to develop evidence which could substantiate my habeas claims.

Ordering a new DNA test has the potential of producing three different outcomes. First, the test can prove inconclusive, in which case no newly-discovered evidence would be before the Court, and the Herrera and Schlup inquiry would be futile. Second, the test results can show the involvement of myself in this crime, in

which case the evidence would moot my claims of innocence. Third, the test results can show that someone other than me was involved in the murder. If the test results indicated a different perpetrator, then the issue would be placed before the Court of whether such evidence, coupled with the other allegations of constitutional error, would be sufficient to grant me relief. However, the DNA evidence must first be brought before the Court in discovery prior to consideration of any petition on the merits.

Even if this Court were to find that I cannot assert an independent claim of actual innocence under Herrera, the DNA tests are reasonably necessary to serve as a gateway to allow claims that may be procedurally barred to be heard on the merits. See Schlup, 513 U.S. at 327. A habeas petitioner is procedurally barred from litigating a constitutional claim in federal court if the petitioner has failed to assert the claim in a prior state proceeding. See generally id. However, newly-discovered evidence showing factual innocence may serve as a gateway to have the habeas petitioner's procedurally barred constitutional claims heard on the merits, and ultimately, to prevent a fundamental miscarriage of justice. See id. I did assert an ineffective assistance of counsel claim during both my state and first federal habeas proceedings. However, my counsel during the federal proceedings never sought DNA testing which could at this point prove that, but for counsel's ineffectiveness, the result of the proceeding would have been different. Therefore, I may be able to assert such claims of ineffective assistance of counsel before a court because they are based on newly-discovered evidence that could demonstrate factual innocence.

To assert a constitutional claim of ineffective assistance, a petitioner must show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup, 513 U.S. at 327. (citing Murray v. Carrier, 477 U.S. 478 (1986)). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. The reviewing court should consider the "probative force of relevant evidence that was either excluded or unavailable at trial." See id. at 327-28. The new facts need only raise sufficient doubt about a petitioner's guilt to undermine confidence in the result of the trial and to establish a threshold showing of innocence sufficient to justify a review of the merits of the petitioner's constitutional claims. See id. at 317.

In this case, the then existing 1994 DNA testing methods were technologically inferior to recent DNA testing methods, and resulted in an inconclusive determination of a perpetrator. Counsel's failure to pursue forensic evidence in 1998 during the earlier habeas proceeding, which bears directly on guilt or innocence, may amount to error warranting federal habeas relief. See Martinez v. Ryan, 132 S.Ct. 1309 (2012).

The results from the requested DNA retests have the possibility of showing that as always maintained, I am actually innocent, completely, of the crime for which I was imprisoned for LIFE. As allowed in Schlup, I am seeking to utilize this evidence of actual innocence to support my claim that my counsel's representation violated his Sixth Amendment right to the effective assistance of counsel. The Fourth Circuit has also previously found with regard to Schlup-type claims of

innocence that "DNA evidence that the defendant ... was not the one who

contributed the seminal fluid found in the semen samples taken from the victim or

her clothing established the requisite probability that a reasonable jury would not

have returned a guilty verdict." Hunt v. McDade, 205 F.3d 1333, 2000 WL 219755,

*3 (4th Cir.2000) (unpublished). The requested DNA evidence can establish the

requisite possibility that would enable a jury not to return a guilty verdict because,

as explained earlier, it can eliminate me as the one who committed the acts as

alleged by the prosecution in the degree they alleged I committed this crime. In

light of the massive resources devoted to this case by the prosecution, the

Commonwealth possesses information which would shed light on the identities of

persons who committed this crime. Therefore, my request for DNA testing is

reasonably necessary to support my claim that I was deprived of my Sixth

Amendment right to the effective assistance of counsel, and that this deprivation

resulted in the incarceration of an innocent man.

     Moreover, Rule 6(a) of the Rules Governing Section 2254 Cases states that "a

party shall be entitled to invoke the processes of discovery available under the

Federal Rules of Civil Procedure" if good cause is shown and the judge, in the

exercise of his discretion, grants the party leave to do so. RULES GOVERNING

§2254 CASES, Rule 6(a); see also FED.R.CIV.P. 81(a)(2) (stating that the Federal

Rules of Civil Procedure apply to proceedings for habeas corpus). Good cause for

discovery under Rule 6(a) is shown "where specific allegations before the court show

reason to believe that the petitioner may, if the facts are fully developed, be able to

demonstrate that he is entitled to relief." Harris v. Nelson, 394 U.S. 286 (1969); see

also <u>Quesinberry v. Taylor</u>, 162 F.3d 273, 279 (4th Cir.1998) (same). Where, as

here, there are claims of constitutional error, there has been an advancement in

DNA technology that could demonstrate a viable claim of actual innocence, this

Court should act within its discretion in finding that good cause has been shown to

make limited processes of discovery available to me. See <u>Gaitan-Campanioni v.</u>

<u>Thornburgh</u>, 777 F.Supp. 1355, 1356 (E.D.Tex.1991) (holding that although

discovery is permitted in habeas cases only by leave of court, court should not

hesitate to allow discovery where it will help illuminate issues underlying

applicant's claim).

   Good cause can be shown that I am entitled to utilize limited discovery

because I could not have presented to the trial court the evidence I now seek, and

because upon this evidence a jury would not find me guilty. As explained above, the

Commonwealth admitted DNA evidence in my state trial. However, the DNA

testing on the evidence was partially inconclusive. I could not have previously

discovered through the exercise of due diligence the quality of DNA test results I

now seek because DNA technology had not advanced to the level of accuracy and

precision it has now achieved.

   Furthermore, based on the results that I expect from the DNA tests, it is

arguable that no reasonable jury would find me guilty of the murder of Troy Lee

Stanford.

   Finally, Rule 34 of the Federal Rules of Civil Procedure states that a party

may request that another party produce documents and tangible things for testing.

See FED.R.CIV.P. 34(a). Because the evidence that I seek to perform DNA analysis

upon is in the custody or control of the defendants, this Court should act within its authority to order defendants to retain the evidence so that it may be produced to this Court or me for testing. Furthermore, even if defendants are not viewed as equivalent to parties in this action, Rule 34(c) permits the Court to compel non-parties to produce documents and "things." See FED.R.CIV.P. 34(c).

Notwithstanding the Commonwealth's history of destroying evidence, it is doubtful that harm would flow to anyone other than me due to the requested discover and testing. I already stand convicted and imprisoned and the Commonwealth does not need the evidence in order to carry out my sentence. The evidence has been sitting in some storage place for years, and that is where it will remain, untested and unused, unless the Commonwealth is compelled to make it available.

In the United States Supreme Court case <u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988), a defendant argued post-conviction that the police's failure to preserve physical evidence violated his Due Process rights under the Fourteenth Amendment. 488 U.S. at 52. Youngblood argued that the police's failure to refrigerate the victim's clothing, and to have a physician examine samples close to the time the samples were taken, denied him evidence material to his defense. See id. at 54. The Youngblood Court considered "what might loosely be called the area of constitutionally guaranteed access no evidence." Id. The Supreme Court concluded that one's Due Process rights are violated if evidence is destroyed and the officials in possession of that evidence knew of the potentially exculpatory value of the evidence. See id. at 56, 58. Here, defendants are aware of my assertion that the

evidence held by them is exculpatory. Therefore, once good cause is shown for

discovery, it is appropriate for this Court to protect my right to access the evidence.

See RULES GOVERNING §2254 CASES, Rule 6(a) (permitting habeas petitioners

use of Federal Rules of Civil Procedure within discretion of court and for good cause

shown); FED.R.CIV.P. 26(b)(1) (permitting discovery regarding the existence,

description, and nature of tangible things); FED.R.CIV.P. 34(a) (permitting

discovery of documents and things, and the copying, testing, or sampling of tangible

things).

Also, The United States Supreme Court has held that it is not error, and, in

fact, is appropriate for a federal court to order a state official to retain, preserve, or

protect tangible things. See United States v. Shipp, 203 U.S. 563 (1906) ("Shipp I");

United States v. Shipp, 214 U.S. 386 (1909) ("Shipp II ").

This Circuit has accepted a district court's authority to enter a preservation

order. In the products liability case of Cole v. Keller Industries, Inc., 872 F.Supp.

1410 (E.D. Va. 1994), District Judge James R. Spencer issued a "non-destruct" order

to prevent further destruction of evidence. 872 F.Supp. 1470, 1472. Judge Spencer

ultimately granted a motion by defendant for summary judgment, grounded, in

part, on spoliation of evidence. Judge Spencer held that "preservation of the

allegedly defective product is of 'utmost importance' in defending against a product

liability suit." Id. at 1473. Spencer held that the failure to preserve the evidence

prejudiced the defendant. See id. The Fourth Circuit reversed Judge Spencer's

grant of summary judgment, holding that, absent a showing of bad faith, dismissal

on the grounds of spoliation of evidence was not authorized. See Cole v. Keller

Industries, Inc., 132 F.3d 1044, 1047 (4th Cir.1998) (citing Vodusek v. Bayliner

Marine Corp., 71 F.3d 148, 155-57 (4th Cir.1995); Berthold-Jennings Lumber Co. v.

St. Louis, I.M. S. R. Co., 80 F.2d 32, 41-42 (8th Cir.1935); Gentry v. Toyota Motor

Corp., 252 Va. 30, 471 S.E.2d 485 (1996)).  However, in its careful and thorough

analysis of the law and the district court proceedings, the Fourth Circuit did not

hold that Judge Spencer acted outside of his authority to issue an order to prevent

the further destruction of evidence.  See generally id.  I am therefore asking this

Court to order the defendants to ensure the preservation of the evidence in this case

so that I can have it tested and later used if necessary in conjunction with a petition

for relief.

## CONCLUSION

This Court is being called upon to make a judgment about the reasonable

necessity of DNA testing services to a convicted prisoner's case that has no other

means by which to achieve this result despite many avenues used in the state

courts.  This Court needs not make a proclamation or judgment about my claims of

innocence.

Inexplicably, the Commonwealth has refused to conduct the DNA tests which

could clarify whether my constitutional rights have been violated through my

conviction and sentence.  This Court has the authority to act, despite the

Commonwealth's disinterest in addressing the real questions raised by me during

the state proceedings.  Virginia's recent experience with Earl Washington and

others requires this Court to give deliberate reflection upon my request.  This Court

must consider whether the Commonwealth could be wrong in their perplexing

refusal to conduct modern DNA testing that would remove nagging questions about this case.

In all of my prior filings, this case has remained concluded without an adjudication of the merits, simply dismissing my actions for procedural reasons that have now been remedied.  What has remained unwavered is that the evidence being stored by the Commonwealth contains many of the answers that have always been in dispute but desperately needed to ensure a fair conclusion to such a long case.  In light of only speculation, which was heavily relied upon to secure a conviction, pure evidence of either guilt or innocence can now be obtained simply by testing the evidence the Commonwealth has always had.  No other remedy is available, but none is needed.  To ensure that the right man is answering for a crime committed or correcting an injustice that has imprisoned the wrong man is the sole purpose of what the legislation intended when it created Va. Code 19.2-327.1.

This Court, in this action, is my last resort.

A. **Relief Requested (check those remedies you seek):**
_____ Award money damages in the amount of $_____
_____ Grant injunctive relief by _____
_____
**XXX** Other: Order the defendants to preserve and test the evidence stored in my criminal case.

**I understand that in a §1983 action the Court cannot change my sentence, release me from custody or restore good time.  I understand I should file for a writ of habeas corpus if I desire this type of relief. FEC___ (please initial)**

B. **Places of incarceration (Please list the institution(s) at which you were incarcerated during the last 6 (six) months.  If you were**

transferred during this period, list the date(s) of transfer.  Provide an address for each institution.):

(August, 2015 to Present): River North Correctional Center, 329 Dell Brook Lane, Independence, Virginia 24348;

(July, 2012 to August, 2015): Red Onion State Prison, P.O. 970, Pound, Virginia 24279

C. **Consent to trial by a magistrate judge (The parties are advised of their right, pursuant to 28 U.S.C. §636(c), to have a U.S. Magistrate Judge preside over a trial, with appeal to the U.S. Court of Appeals for the Fourth Circuit.  You may consent at any time; however, an early consent is encouraged.)**

**Do you consent to proceed to proceed before a U.S. Magistrate Judge?        Yes [X]  No [ ]**

Signed this 11th day of _____December_____ , _2015_ ,

_Freddie (Eugene) Casey_
                    Freddie Eugene Casey, Pro-Se

**VERIFICATION:**
I, Freddie Eugene Casey, state that I am the plaintiff in this action and I know the content of the above complaint; that it is true of my own knowledge, except as to those matters that are stated to be based on information and belief, and as to those matters, I believe them to be true.  I further state that I believe the factual assertions are sufficient to support a claim of violation of constitutional rights.  Further, I verify that I am aware of the provisions set forth in 28 U.S.C. §1915 that prohibit an inmate from filing a civil action or appeal, if the prisoner has, on three or more occasions, while incarcerated, brought an action or appeal in federal court that were dismissed on grounds that is was frivolous, malicious or failed to state a claim upon which relief may be granted, unless the prisoner is in imminent danger of serious physical injury.  I understand that if this complaint is dismissed on any of the above grounds, I may be prohibited from filing any future actions without the pre-payment of filing fees.

Signed this 11th day of _____December_____ , _2015_ ,

_Freddie (Eugene) Casey_
                    Freddie Eugene Casey, Pro-Se

## CERTIFICATE OF SERVICE

I hereby certify that on the __11th__ day of __December__, __2015__, I,

Freddie Eugene Casey,  mailed a copy of the foregoing complaint under Civil Rights

Act 42 U.S.C. §1983to the Office of the Clerk for the U.S. District Court for the

Western District of Virginia, 210 Franklin Road, SW, Roanoke, Virginia 24006

and that one (1) true and correct copy of the aforementioned document was sent to

Jack S. Hurley, Judge, Circuit Court of the City/County of Tazewell, 101 East Main

Street, Suite 202, Tazewell, Virginia 24651, (defendant); Michael L. Dennis and

Dennis H. Lee, Commonwealth Attorney for the City/County of Tazewell, 104 Court

Street, P.O. Box 946, Tazwell, Virginia 24651, (defendants), and to the Office of the

Attorney General of Virginia, 900 East Main Street, Richmond, Virginia 23219,

counsel for Harold W. Clarke, (defendant), and that this was done via United States

Mail, by submitting said mail to the Prison Mailroom.


By: _Freddie (Eugene) Casey_
     *Signature*


Freddie Eugene Casey #1029731

River North Correctional Center

329 Dell Brook Lane

Independence, Virginia 24348