**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **FREDDIE EUGENE CASEY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:15CV00674 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **JACK S. HURLEY, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Freddie Eugene Casey, Pro Se Plaintiff.*

Plaintiff Freddie Eugene Casey, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, seeking a court order to preserve and obtain DNA testing on forensic evidence related to his conviction. After review of the record, I conclude that this civil action must be summarily dismissed as legally frivolous.

## I.

Casey was convicted in Tazewell County Circuit Court in 1994 of first degree murder and is presently serving the life sentence imposed in that case. The Court of Appeals of Virginia summarized the trial evidence as follows:

> On January 23, 1991, the decomposed body of Troy Lee Stanford (Stanford) was discovered, covered with underbrush, a tire, and a leather jacket, in the woods in Russell County. At the autopsy, the medical examiner counted 117 stab wounds to the body and noted that several of the stab wounds had punctured internal organs. The

medical examiner determined the cause of death to be "very massive, rapid internal bleeding," and estimated that Stanford had been dead "anywhere from a week to three or four months."

Keith Stanford, the victim's brother, testified that he last saw Stanford alive on December 13, 1990. On that day, the brothers gave a ride to [Casey], and [Casey] had borrowed twenty dollars from Stanford. Samuel Goodman saw Stanford alive between 5:00 and 6:00 p.m. on December 14, 1990.

Darrell Crabtree testified that he went to Brian Rowe's trailer on Daw Road around 1:00 a.m. on December 15, 1990. Bobby Shortridge opened the trailer door, but told him to come back later. Crabtree, however, pushed his way into the trailer and heard Barbie Clendenin crying. He saw another woman washing blood from the trailer walls and the kitchen table. When Crabtree asked what was going on, [Casey] said, "I killed the son of a bitch." Crabtree asked "who," to which [Casey] replied, "that narcing son of a bitching Troy Stanford." Crabtree did not see a body. As Crabtree was leaving the trailer, [Casey] and Brian Rowe told him that he "didn't see nothing," and told him not to tell anyone. Later, while incarcerated in the Russell County jail, Crabtree saw [Casey] again and [Casey] insisted that he not say anything about the killing.

[Casey] told Ricky Fletcher and Yvonne Lester that he had cut someone on Daw Road because he had a habit to support. Later, while in the Bristol jail, [Casey] told Fletcher that he had stolen $350 to $400 from the man he killed. William Lester testified that, while in the Bristol jail, [Casey] told other inmates that he stabbed Stanford in the chest several times. [Casey] said that Stanford had been lured to the trailer and [Casey] had "killed the snitching bastard."

Richard Hurt and Robert Hill also testified in the Commonwealth's case in chief. Hurt stated that he had talked to [Casey] in the Russell County jail about the murder. [Casey] told Hurt that Stanford had come to the trailer to collect some money that [Casey] owed him, and "an argument broke out." [Casey] said he stabbed Stanford and, when he stabbed him, he did not want to quit. It was only the screaming of others in the trailer that brought [Casey] back to his "attention." [Casey] told Hurt that watching someone take

his last breath was "real excitement." [Casey] also told Hurt that he required everyone at the trailer to cut the body at least one time so that no one would tell what happened.

Robert Hill testified that, while in the Tazewell County jail, [Casey] showed him a "forensic picture" of Stanford's body, showing the stab wounds. [Casey] told Hill that he had borrowed money from Stanford and, when Stanford came to collect it, [Casey] did not have the money. [Casey] said they had an argument, a knife was pulled, and there was a struggle. [Casey] said he "just kept stabbing him," and then he and Brian Rowe took the body to the woods and covered it with brush and tires.

Several witnesses testified for the defense that [Casey] was not present at Brian Rowe's trailer on the evening of December 14 and early morning of December 15, 1990. Other witnesses testified as to [Casey]'s whereabouts at that time. [Casey] testified that he did not kill Stanford and had no knowledge of how Stanford was killed. [Casey] claimed that the witnesses for the prosecution were lying and were receiving some benefit from the Commonwealth for their false testimony.

*Casey v. Commonwealth*, No. 1326-94-3, 1995 WL 444429, at *1-2 (Va. Ct. App. July 25, 1995) (unpublished) (finding that trial court's refusal to instruct jurors on second degree murder was not error). Casey's later application for appeal to the Supreme Court of Virginia and his state and federal habeas corpus proceedings were unsuccessful.

In 2012, Casey filed a motion under state law for DNA testing of untested biological evidence and for retesting of evidence previously found to be inconclusive during the trial. *See* Va. Code Ann. § 19.2-327.1. The state Circuit Court denied this motion based on Casey's failure to comply with section 19.2-

327.1(c), requiring the movant to serve a copy of his motion on the Commonwealth's Attorney. After Casey moved for reconsideration, the Circuit Court conducted a hearing and heard Casey's arguments in favor of testing each piece of evidence from his case toward potential proof of his innocence. Ultimately, the Court denied Casey's motion, and the Supreme Court of Virginia dismissed his subsequent appeal.

In 2014, Casey filed new motions seeking preservation and testing of the specific items of biological evidence from the crime scene, including the blood sample from the victim, swabs, hair and fibers from carpet pieces, and clothing. The Circuit Court denied this motion upon finding that (1) Casey did not "enumerate 'the reason or reasons that the . . . untested evidence may prove the actual innocence of the person convicted'" (quoting Va. Code Ann. § 19.2-327.1(B)(iii)); and (2) "there is no reason for testing the [listed] untested evidence because it cannot prove the actual innocence of Petitioner," as the statute requires.[1] (Compl. Attach. 11, ECF No. 1-1)

---

[1] The Virginia statute authorizes a convicted Virginia inmate to apply for "new scientific investigation of any human biological evidence related" to his criminal case if certain conditions are met. Va. Code Ann. § 19.2-327.1(A). Among other things, the applicant must show that the desired "testing is materially relevant, noncumulative, and necessary and may prove the actual innocence of the convicted person" of the crime of conviction. Va. Code Ann. § 19.2-327.1(A)(iii).

In his present Complaint, Casey contends that to preserve his due process rights, this court should order the defendants[2] to preserve and retest the biological evidence items at issue in his motions to the state court. With such evidence of his innocence, Casey believes he could challenge the procedural default of past habeas claims and/or support a new habeas claim of actual innocence. He believes that new DNA testing will prove the absence of his DNA on the items from the crime scene and thus prove that he did not commit the murder.

## II.

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). In this context, the court may dismiss as frivolous a claim based on "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013).

---

[2] The defendants in this action are the Circuit Court judge and two prosecutors involved in the criminal case, and the director of the Virginia Department of Corrections.

Casey cites *Skinner v. Switzer,* 562 U.S. 521 (2011), as authority for the proposition that by refusing to order the release of biological evidence for testing, the Circuit Court deprived him, without due process, of a federally protected liberty interest under state law to seek to prove his actual innocence.[3] In essence, Casey wants me to hold that the Circuit Court's orders denying relief under state law were erroneous and order that the evidence be preserved and tested.

An inmate has no substantive due process right after his conviction to have DNA evidence preserved or tested. *Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72 (2009); *see also Skinner*, 562 U.S. at 525. It is true that such a defendant may have a protected "liberty interest in demonstrating his innocence with new evidence under state law," *Osborne*, 557 U.S. at 68, and may pursue a § 1983 procedural due process claim in that context. *Skinner*, 562 U.S. at 524-25. Where the defendant contends, however, as Casey does, "that the state circuit court erroneously applied the statute in deciding his case," a federal district court "lack[s] jurisdiction over this claim under the *Rooker-Feldman*

---

[3] Casey also cites *Cherrix v. Braxton*, 131 F. Supp. 2d 756 (E.D. Va. 2001), as support for his motion for retesting of evidence. The *Cherrix* decision, however, concerned a former statutory provision applicable only to habeas corpus actions challenging a defendant's federal conviction for capital murder. *See* 21 U.S.C. § 848(q) (repealed). Neither *Cherrix* nor the statute to which it applied have any relevancy to Casey's situation.

doctrine."[4] *Muhammad v. Green*, No. 15-6638, 2016 WL 519115, at *1 (4th Cir. Feb. 10, 2016) (unpublished).

I conclude that Casey states no factual or legal basis for a § 1983 claim here. First, Casey has no substantive due process right to have items of trial evidence preserved or tested postconviction. Second, I lack jurisdiction under § 1983 to review the merits of the Circuit Court's decisions that Casey is not entitled to the relief he seeks under § 19.2-327.1.[5] For these reasons, I will summarily dismiss this action under 28 U.S.C. § 1915A(b)(1) as legally frivolous.

A separate Order will be entered herewith.

DATED: March 3, 2016

/s/ James P. Jones
United States District Judge

---

[4] *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[5] I find no merit to Casey's assertion that I may order production of the trial evidence as necessary discovery material, under Rule 34 of the Federal Rules of Civil Procedure or Rule 6(a) of the Rules Governing § 2254 Cases. As I have no jurisdiction over the underlying legal claim, I find no basis on which to order the defendants to comply with Casey's discovery requests related to that claim. Moreover, Rule 6(a) allows discovery only by leave of court, and I find no basis to grant such leave; if this action were reconfigured as a petition for a writ of habeas corpus under 28 U.S.C. § 2254, so as to be governed by Rule 6(a), I would be required to summarily dismiss the petition as successive under 28 U.S.C. § 2244(b).